**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | | |
|---|---|---|
| JACOB R. PRATT, | ) | 3:11-cv-00604-RCJ (WGC) |
| Plaintiff, | ) ) | **REPORT AND RECOMMENDATION** |
| vs. | ) ) | **OF U.S. MAGISTRATE JUDGE** |
| JAMES COX, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United States District Judge. This action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. section 636(b)(1)(B) and Rule IB 1-4 of the Local Rules of Practice.

Currently before the court are two motions:

1. Defendants' (specified below) Motion for Summary Judgment (Doc. # 19). Plaintiff Jacob R. Pratt opposed (Doc. # 25) and Defendants replied (Docs. # 27, # 30); and

2. Pratt's Cross-Motion for Summary Judgment (Doc. # 26). Defendants opposed (Docs. # 28, # 30) and Pratt has not filed a Reply brief.

After a thorough review, the court recommends Defendants' motion should be granted and Pratt's cross-motion should be denied.

**I. BACKGROUND**

Plaintiff Jacob R. Pratt, a *pro se* litigant in the custody of the Nevada Department of Corrections ("NDOC"), brings this action pursuant to 42 U.S.C. section 1983. (Pl.'s Am. Compl. (Doc. # 5) at 1.) The events giving rise to this litigation occurred while Pratt was housed at Ely State Prison ("ESP") in

Ely, Nevada. (*Id*. at 3.) Defendants are James Cox, Director of NDOC; Renee Baker, ESP Warden; and Debra Brooks, ESP Warden (collectively "Defendants," unless referred to individually or otherwise noted). (*Id*. at 2.)

In this case, Pratt contends Defendants have inadequately overseen and implemented the policies governing his security classification and his placement and continuing confinement in disciplinary segregation. In Count I, he contends Defendants violated his procedural due process rights under the Fourteenth Amendment by arbitrarily classifying him as a High Risk Potential ("HRP") inmate, denying him a proper disciplinary or classification hearing, and indefinitely confining him in disciplinary segregation. In Count II, he argues Defendants violated the Eighth Amendment's ban on cruel and unusual punishments because his confinement in disciplinary segregation denies him access to un-nutritious food and adequate warm clothing, yard time, exercise and fresh air. In Count III, Pratt avers he has been denied the opportunity to purchase a dictionary and take correspondence courses while housed in disciplinary segregation in violation of the First Amendment.

On screening, the court determined Pratt stated a colorable claims on all three Counts against all three defendants. (Doc. # 7 (Screening Ord.) at 6.) Now, both Pratt and Defendants move for summary judgment and argue the undisputed material facts require entry of judgment as a matter of law, for their respective positions.

## II. STANDARD OF REVIEW

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id*. (quoting FED. R. CIV. P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See Liberty Lobby*, 477 U.S. at 250.

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *See Liberty Lobby*, 477 U.S. at 248-50. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense at trial, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

3

U.S. 574, 586 (1986). To establish the existence of a genuine factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (internal quotations and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50, 255 (citations omitted).

### III. DISCUSSION

The court has set forth Pratt's core allegations with respect to each Count in his Amended Complaint. The court will now conduct an analysis of each Count. Because the parties have submitted competing summary judgment motions setting forth different versions of the underlying facts, rather than presenting *all* of the factual allegations and then determining which facts are material and which of those material facts are genuinely in dispute, the court will conduct the analysis of each Count using the *relevant* evidence and allegations pertaining to each Count.[1]

///
///

---

[1] Although Defendants submitted nearly two-thousand (2,000) pages of exhibits, the court will only refer to those exhibits that are usefully cited in the record and also relevant to Pratt's claims. The court need not, and will not, "scour the record in search of a genuine issue of triable fact," or the absence thereof. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) ("A district court is not required to speculate on which portion of the record the . . . party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the . . . claim.")

**A. Count I: HRP Classification and Disciplinary Hearing (Procedural Due Process)**

   *1. Summary of Evidence*

On January 31, 2010, Pratt stabbed ESP Officer Stubbs in the process of being removed from his cell, which was flooding after he allegedly broke a sprinkler head contained therein. (Doc. # 19-2 at 7.) On February 2, 2010, Pratt signed a document titled "Notice of Classification Hearing," which informed him of his required presence before an Administrative Segregation Classification Committee at 10 a.m. on February 4, 2010. (Doc. # 19-3 at 6.) The stated reason for this hearing was: "FCC for HRP review and placement." *Id.* Although Pratt was placed on administrative segregation status on February 3, 2010, it was noted in his inmate file that a hearing on reclassification and HRP placement was "pending." (*See* Doc. # 19-1 at 18.)

A full Classification Committee hearing took place on February 4, 2010. (*Id.* at 19.) The case notes from that report read, in pertinent part:

> Inmate Pratt appeared for HRP review . . . . [Officer] Willis chaired the hearing for [Defendant] Baker. [Operational Procedure ("OP")] 434 [regarding HRP inmates] was read in it's entirety to inmate Pratt. He was advised that he is being considered for HRP placement as he qualifies under the clause "Assaultive behavior against staff or inmates". . . . Inmate Pratt was advised that due to his stabbing assault of [Officer] Stubbs on 1/31/10, he is considered H.R.P. and the appropriate sign will be affixed to his cell door . . . . [Pratt] had no statement to make and only requested to get a copy of the HRP OP.

(*Id.*)

Pratt's classification was either reviewed or assessed on July 28, 2010, January 28, 2011, July 8, 2011, July 29, 2011, and January 27, 2012. (*Id.* at 19-20.) Pratt requested to be removed from HRP status and disciplinary segregation on several occasions, but prison officials refused to do so at the July 8, 2011 HRP review and the January 25, 2012 HRP review due to: (a) other disciplinary infractions Pratt committed while on HRP status, or (b) Pratt's failure to stay discipline-free for the requisite period of time. (Doc. # 19-1 at 19-20.) Ultimately, Pratt was granted "timecuts" for his good behavior and given a new disciplinary segregation end date of September 25, 2012, which, based on any evidence to the contrary, appears to have been honored. (*Id.* at 20.) As of today, it appears Pratt is still classified as HRP.

   *2. Legal Standard*

A procedural due process claim under section 1983 has three elements: "(1) a liberty . . . interest

5

protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993); *see Clements v. Airport Auth. of Washoe County*, 69 F.3d 321, 331 (9th Cir. 1995) (an individual is only entitled to procedural due process if he was deprived of a protected property or liberty interest). Whether an inmate has established a liberty interest is a threshold issue. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("We need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest, so it is appropriate to address this threshold question at the outset."). An inmate-plaintiff "does not have a federal liberty interest in a particular security level." *Prestridge v. McDaniel*, 3:08-cv-557-ECR (VPC), 2008 WL 5451006, at p. *1-2 (D. Nev. Dec. 29, 2008) (Reed, J.) (citing *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)).

In addition, liability for *any* alleged constitutional violation or deprivation under section 1983 "arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted); *accord Perez-Morciglio v. Las Vegas Metro. Police Dep't*, 820 F.Supp.2d 1111, 1128 (D. Nev. 2011); *Gray v. Hernandez*, 651 F.Supp.2d 1167, 1190 (S.D. Cal. 2009); *see also Jones v. Williams*, 297 F.3d 930, 937 (9th Cir. 2002) (supervisory liability attaches to a defendant only if he or she is personally involved in the alleged constitutional violation or deprivation, or if a sufficient causal connection exists between the supervisor's wrongful conduct and the violation or deprivation) (quoting *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991)).

### *3. Analysis*

In this case, the record lacks any indication that Defendants Cox and Brooks personally participated in Pratt's HRP classification. Nor does the record contain any evidence that these defendants acted wrongfully or that their wrongful conduct bore a sufficient causal connection with Pratt's HRP classification. Consequently, the court finds there is no genuine issue of material fact as to whether Defendants Cox and Brooks violated Pratt's procedural due process rights. *Taylor*, 880 F.2d at 1045 (citation omitted); *Jones*, 297 F.3d at 937.

Secondly, while Defendants do not argue that Baker did not personally participate in the alleged

6

procedural due process violations, Pratt provides no evidence that she *did* personally participate. Even assuming *arguendo* Baker was personally involved, however, the court finds Pratt has no federal liberty interest in a particular classification, such as non-HRP. *See Prestridge*, 2008 WL 5451006, at p. *1-2 (citing *Moody*, 429 U.S. at 88 n.9). In any case, the record contains no evidence that Pratt's HRP designation implicated a liberty interest under the "atypical and significant hardship" analysis set forth in *Sandin v. Connor*, 515 U.S. 472, 484 (1995).

**B. Count II: Conditions of Confinement (Eighth Amendment)**

*1. Legal Standard*

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S. CONST. amend. VIII. "It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

Although conditions of confinement may be restrictive and harsh, they may not deprive inmates of "the minimal civilized measures of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin*, *supra*; *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). As the Supreme Court recently stated:

> To incarcerate, society takes from prisoners the means to provide for their own needs. Prisoners are dependent on the State for food, clothing, and necessary medical care. A prisoner's failure to provide sustenance for inmates "may actually produce physical 'torture or lingering death.'"

*Brown v. Plata*, --- U.S. ---, ---,131 S.Ct. 1910, 1929 (2011) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (internal citation omitted)).

Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (citation omitted). The deliberate indifference standard involves an objective and subjective component. First, the alleged deprivation must

7

be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834 (citation omitted). Second, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id*. at 837. Thus, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 835.

### *2. Analysis*

#### a. Meals

Pratt alleges the food he receives is not "nutritionally adequate" and that it is "often fetid or rotten, meat marked 'not for human consumption' is often used to cut costs." (Doc. # 5 at 7.) He claims the food temperature is "not monitored to prevent bacterial growth." (*Id*.) As a consequence, Pratt avers he has suffered mental distress, hypertension, weight loss and an upset stomach. (*Id*. at 8.)

In their motion for summary judgment, Defendants cite to prison regulations governing food preparation and service to support their argument that food is checked for temperature and sanitation prior to service to inmates. (Doc. # 19 at 17; Doc. # 19-8 at 60-69.) Defendants also cite to the declaration of Mary Agnes Boni, an nutritional analyst of NDOC's food menus, to support their argument that the menu at ESP has been certified as nutritious. (Doc. # 19 at 17; Doc. # 21-2 at 2-4.) Defendants further contend that Pratt's medical records contain no evidence that his health has suffered as a result of ESP's meals, and Defendants allege Pratt's canteen receipts show he has purchased candy on multiple occasions. (Doc. # 19 at 17.) Finally, Defendants argue they are not personally involved in the service of meals at ESP. (*Id*.)

In Pratt's motion for summary judgment, he alleges his health has suffered from Vitamin D deficiency because the nutritional analysis of the food served at ESP does not account for his sunlight-deprived "locked-down" status as an inmate. (Doc. # 26 at 15.) Pratt also claims that he gets no whole grains, fresh fruit only every other day, and huge amounts of white bread and highly-processed meat. (*Id*.) He further contends that the sack lunches are delivered at 5 a.m. and eaten around noon, which makes the food room temperature and sour. (*Id*.) Pratt attempts to support these allegations with affidavits from other inmates. (Doc. # 26, Exs. 7, 10-13.)

1    "Adequate food is a basic human need protected by the Eighth Amendment." *Keenan v. Hall*,
2  83 F.3d 1083, 1091 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998); *see also Foster v.*
3  *Runnels*, 554 F.3d 807, 812-13 (9th Cir. 2009) (finding the denial of sixteen meals in twenty-three days
4  was a sufficiently serious deprivation for Eighth Amendment purposes). In this case, Pratt is not
5  challenging the existence or substance of ESP's regulations governing food preparation and service. Nor
6  is he challenging the nutritional analysis of ESP's menu items. Pratt is challenging the *actual food* he
7  is being served. Thus, the prison policies and regulations that seemingly undermine Pratt's allegations
8  bear an insufficient relationship to the substance of Pratt's allegations. Further, Ms. Boni admits that she
9  "do[es] not visit individual correctional sites, my recommendations and verifications are based upon the
10 menus I receive from the NDOC purchasing division." (Doc. # 21-2 at 2.) Ms. Boni, therefore, has no
11 *personal* knowledge of the quality or propriety of food preparation and service about which Pratt
12 complains. As a consequence, her declaration is of little assistance to the court.

13    What the court is left with, therefore, are Pratt's allegations. Upon close review of these
14 allegations, the court finds Defendants did not act with deliberate indifference to a substantial risk of
15 serious harm to Pratt in providing meals to him. *Frost v. Agnos*, 152 F.3d at 1128 (citation omitted).
16 First, the objective component of the conditions of confinement analysis is not supported by the record.
17 The Constitution does not require an optimal daily diet consisting of full servings of each and every food
18 group, including whole grains and fruits. Rather, the Constitution merely guarantees "adequate" food
19 for sustenance. *Keenan*, 83 F.3d at 1091. The record supports a finding that Pratt receives adequate food
20 for sustenance at ESP.

21    Further, while unrelated to the meals ESP serves him, Pratt's receipts from NDOC's Nevada
22 Inmate Store System ("NISS") also show that Pratt has purchased numerous food items at the canteen
23 since 2009, including refried beans, tortillas, Top Ramen noodles, corn chips, bear claws, and coffee.
24 *See*, *e.g.*, 19-6 at 41-42, 45-46. Thus, it appears Pratt is able to rectify or mitigate any deficiency he
25 perceives in ESP's meal service by purchasing other food items. In addition, his complaints about the
26 temperature of the food, even if true, do not rise to the level of a "sufficiently serious" deprivation. Pratt
27 is not being denied any food. Instead, it appears Pratt is being denied the food *he prefers* served to him

*in a way he prefers.* Such a complaint does not implicate the Constitution.

Further, even assuming *arguendo* the objective prong of the analysis was satisfied, the record does not support a finding under the subjective prong, either. The record is lacks any evidence that Defendants knew of and disregarded an excessive risk to Pratt's health because they did not personally participate in the meal service about which Pratt complains. *Taylor*, 880 F.2d at 1045 (citation omitted); *Farmer*, 511 U.S. at 834 (citation omitted).

Therefore, the court finds that no genuine issue of material fact exists as to whether Defendants imposed unconstitutional conditions of confinement by way of the meals Pratt consumes at ESP.

b. Exercise

Pratt alleges he gets "very little" recreational yard time. (Doc. # 5 at 6.) He further alleges that, as an inmate in disciplinary segregation, even though he is able to have athletic shoes, he is "banned" from buying new shoes when his old shoes wear out. (*Id*. at 6-7.) According to Pratt, "[t]he state shoes can not be worked out in because they offer no support." (*Id*. at 7.)

Exercise is "one of the basic human necessities protected by the Eighth Amendment." *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993). However, "a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997). Here, even assuming *arguendo* Defendants were personally involved in Pratt's alleged deprivation of exercise, Defendants face no liability. To the extent that Pratt alleges Defendants actually *denied* him recreational yard time (an allegation Pratt's yard logs do not support (see generally Docs. # 20-4 through 20-14, Ex. DD), Pratt fails to state a sufficiently serious deprivation because the denials, if any, were temporary. *See May*, 109 F.3d at 565; *Farmer*, 511 U.S. at 834 (citation omitted). Further, Pratt makes no allegation that any denial of outdoor exercise produced adverse health effects. *See May*, 109 F.3d at 565.

Moreover, the alleged "ban" on purchasing new athletic shoes by virtue of Pratt's placement in disciplinary segregation is a moot point since it appears Pratt is no longer in disciplinary segregation. (*See* Doc. # 19-1 at 20.) Even if he were still in disciplinary segregation, however, the court finds Pratt's complaint about athletic shoes is not sufficiently serious to trigger constitutional protection. *Farmer*, 511

U.S. at 834 (citation omitted). The Constitution does not guarantee inmates new athletic shoes when old ones become worn. Nor does the Constitution guarantee inmates athletic shoes with the proper amount of support, which, the court notes, is a subjective preference. Such complaints fall under the ordinary incidents of prison life. Accordingly, the court finds that no genuine issue of material fact exists as to this Count.

c. Warmth

Pratt alleges that "[i]t gets very cold at E.S.P., both on the rec[reational] yard and in the cell." (Doc. # 5 at 7.) He alleges that he cannot purchase blankets, thermal clothing, sweats, gloves or wool caps, but he concedes that he is permitted to have one blanket and two personal blankets. (*Id*.)

Conversely, in their motion for summary judgment, Defendants provide the declaration of John Caviglia, a Facility Supervisor III at ESP, to support their argument that the temperature at ESP, including Pratt's cell, is maintained between 68 and 72 degrees. (Doc. # 19 at 19; Doc. # 19-3 at 2.) Defendants also provide Pratt's canteen receipts to support their argument that Pratt has purchased several articles of warm clothing. (Doc. # 19 at 19; Doc. # 19-3, Ex. O.) Further, Defendants contend that Pratt's medical records lack any evidence indicating that Pratt's health has been adversely impacted by the allegedly cold temperatures. (Doc. # 19 at 19.)

The Eighth Amendment "guarantees adequate heating, but not necessarily a comfortable temperature." *Graves v. Arpaio*, 623 F.3d 1043, 1049 (9th Cir. 2010) (internal quotation marks and citation omitted). "One measure of an inadequate, as opposed to merely uncomfortable, temperature is that it poses 'a substantial risk of serious harm.'" *Id*. (Quoting *Farmer*, 511 U.S. at 834.) In this case, the declaration of Facility Supervisor John Caviglia shows that Pratt's cell has been adequately heated, (*see* Doc. # 19-3 at 2-3), and Pratt presents no evidence to the contrary. In fact, Pratt's receipts from the NISS show that since 2009 he has purchased from the canteen a pair of thermal pants, a thermal shirt, and several pairs of crew socks, athletic shirts and t-shirts. (*See* Doc. # 19-6, Ex. O at 43, 52-55, 60, 63, 65, 67-68, 70, 72, 78-82, 84, 95.) Thus, it appears Pratt has adequate clothing to maintain adequate warmth. Furthermore, Pratt makes no allegations (and the record contains no evidence) that the temperature in his cell has posed a substantial risk of serious harm. *Farmer*, 511 U.S. at 834; *accord*

11

*Graves*, 623 F.3d at 1049. As a consequence, the court finds that no genuine issue of material fact exists as to whether Pratt's complaints about his warmth subject Defendants to liability.

**C. Count III: Book Restrictions and Educational Materials (First Amendment)**

Pratt alleges that, as an inmate in disciplinary segregation, he is not allowed to purchase non-religious or non-legal books even though he is allowed to have books in his cell. (Doc. # 5 at 9.) Specifically, he avers Defendants prohibited him from purchasing an English dictionary. (*Id*.) Pratt contends these restrictions prevent him from taking educational courses or college courses. (*Id*.) He also argues that although he can use the local high school's library, it is "sub par." (*Id*.)

Conversely, Defendants concede that Pratt, as an inmate in disciplinary segregation, is restricted from purchasing certain books, including a dictionary, but they argue that restriction is appropriate under the factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987). (Doc. # 19 at 21.) Defendants further contend Pratt is able to take correspondence courses but he has failed to follow the appropriate approval process. (*Id*. at 23-24.)

***1. Legal Standard***

A prison regulation restricting access to publications implicates the First Amendment and is analyzed under the factors discussed in *Turner v. Safley*, *supra*. *Beard v. Banks*, 548 U.S. 521, 531-33 (2006). In *Turner*, the Supreme Court set forth the following four factors "relevant in determining the reasonableness of the regulation at issue": (1) whether a "valid, rational connection" exists between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether "alternative means" exist of exercising the right that remain open to prison inmates; (3) the "impact" the requested accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether "ready alternatives" are available for furthering the governmental interest. *Turner*, 482 U.S. at 89-91.

In laying out these factors, the Court tried to balance the preservation of "certain important constitutional protections, including those of the First Amendment," while also acknowledging that "the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere." *Beard*, 548 U.S. at 528 (referring to *Turner*). In conducting a *Turner* analysis, courts must

owe "substantial deference to the professional judgment of prison administrators." *Id*. (Internal quotation marks and citation omitted.)

### 2. Analysis

<u>a. Book Restrictions</u>

Here, the prison policy at issue appears to be subsection L of Administrative Regulation ("AR") 733.01, entitled "Disciplinary Segregation Policies." (Doc. # 19-3, Ex. I at 69.) This subsection reads: "Inmates in disciplinary segregation will be allowed access to reading materials from the Law Library or religious texts." (*Id*.) Further, subpart (1) of that subsection reads: "Recreational reading material may be accessed if available." (*Id*.)

The court initially notes that Pratt makes no allegations that Defendants Brooks and Cox were personally involved in approving books or classes. The court, therefore, finds no genuine issue of material fact exists regarding the liability of those defendants on this Count. *See Taylor*, 880 F.2d at 1045 (citation omitted). Secondly, as mentioned previously, Pratt appears to have been removed from disciplinary segregation; thus, the book restrictions about which he complains seemingly are no longer imposed upon him.

Defendants make no lack of personal participation argument concerning Baker. However, even assuming *arguendo* that *all* of the defendants (Brooks, Cox and Baker) were personally involved in the alleged First Amendment violation, and even assuming *arguendo* that the restrictions about which Pratt complains are still being imposed upon him, the court finds all of the *Turner* factors militate in Defendants' favor.

First, Defendants contend "[i]nmates in disciplinary segregation have already demonstrated that they will not follow prison rules, and the restriction on property will give those inmates an incentive to improve their behavior and earn the opportunity to purchase books in the future." (Doc. # 19 at 22.) Precisely the same argument was made in *Beard*, *supra*, with respect to a similar restriction, and the Supreme Court held that restriction satisfied *Turner*'s first factor. *Beard*, 548 at 531-32. Given Pratt's disciplinary history, the court finds ESP's restriction on books for inmates in disciplinary segregation is rationally related to incentivizing inmates like him to improve their behavior and justify removal from

disciplinary segregation.

As to the second factor, Pratt concedes that he can *borrow* a dictionary. His argument is that he cannot *purchase* a dictionary. The court finds the ability to borrow a dictionary is an adequate "alternative means" to exercise the right to own a dictionary. *Turner*, 482 U.S. at 90. This factor, therefore, supports AR 733.01's "reasonableness."

As to the third factor, if ESP officials sought to "accommodate" Pratt's right to a dictionary or other prohibited reading materials, the resulting "impact" to guard and other inmates would be adverse. *Id*. Like the Court stated in *Beard*, if AR 733.01 (in Defendants' view) helps to produce better behavior, then its absence (in Defendants' view) will help to produce worse behavior. *Beard*, 548 U.S. at 532. Consequently, the court finds this factor weighs in favor of upholding the policy.

Finally, in analyzing the fourth factor, the court notes that, as with the second factor discussed above, Pratt's allegations focus on the prohibition of *purchasing* a dictionary. Framing Pratt's allegations in this fashion, the court finds there is an absence of ready alternatives, which is "evidence of the reasonableness of [the] . . . regulation." *Turner*, 482 U.S. at 90 (citation omitted). As the court reads AR 733.01, and as Defendants' concede, inmates in disciplinary segregation are flatly prohibited from purchasing certain reading materials, including dictionaries.

In sum, therefore, the court finds that no genuine issue of material fact exists as to whether AR 733.01, or any other prison regulation restricting Pratt's access to a dictionary or similar reading materials, is "reasonable" under *Turner*.

b. Educational Materials

Pratt alleges that, as an inmate in disciplinary segregation, Defendants have denied him access to educational materials and correspondence courses. (Doc. # 5 at 9.) Upon review of the record, the court finds no evidence that Defendants personally participated in this alleged deprivation, *i.e.*, the record is devoid of any evidence that Defendants rejected Pratt's request to take educational courses. *See Taylor*, 880 F.2d at 1045 (citation omitted). But even assuming *arguendo* Defendants did personally participate, the record clearly demonstrates that Pratt may take correspondence courses if he so desires, but that he has not taken the proper steps to do so, particularly requesting approval from proper

14

authorities. For example, the declaration of Harold M. Byrne, Associate Warden at ESP with personal knowledge of institutional files, demonstrates that, as of July 25, 2012, Pratt has not submitted "the information required to be approved for a correspondence course." (Doc. # 21-1, Ex. FF at 4.) Pratt has submitted nothing to rebut this evidence. Consequently, the court finds that no genuine issue of material fact exists as to whether Defendants violated Pratt's constitutional right to educational materials.

In conclusion, based on the foregoing, the court finds that no genuine issues of material fact exists as to whether Defendants are liable for the alleged constitutional violations contained in Counts I, II or III of Pratt's Amended Complaint. Accordingly, the court recommends Defendants' Motion for Summary Judgment (Doc. # 19) should be granted and Pratt's Cross-Motion for Summary Judgment (Doc. # 26) should be denied.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING** Defendants' Motion for Summary Judgment (Doc. # 19) and **DENYING** Pratt's Cross-Motion for Summary Judgment (Doc. # 26).

The parties should be aware of the following:

1. They may file, pursuant to 28 U.S.C. section 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Judge.

2. This Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Judge's Order.

DATED: December 19, 2012.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE